WIL-LOW CAFETERIAS, INC., Plaintiff, *v.* SAMUEL KRAMBERG and Others, Defendants.

Supreme Court, New York County, May 8, 1929.

*Nathaniel Phillips* [*Benjamin F. Spellman* of counsel; *Nathaniel Phillips* and *Harold H. Levin* with him on the brief], for the motion.

*Oberman & Buetenkram* [*Philip Wittenberg* and *Louis B. Boudin* of counsel], opposed.

SHERMAN, J. Plaintiff owns and operates twenty-two cafeterias or self-service restaurants in New York city, seven of which are located in or about that section of the borough known as the Garment Center. Its employees consist of two classes, one skilled,

such as cooks, countermen and the like, and the other unskilled, such as busboys, dishwashers and others. Defendants are officers of the Hotel, Restaurant and Cafeteria Workers' Union, an unincorporated association claimed to be a branch of the Amalgamated Food Workers Union, which is said to be a national organization. It is not affiliated with the American Federation of Labor.

On April 3, 1929, a meeting called by defendants was held, at which a resolution in favor of a general strike of all cafeteria workers in the garment section was adopted. On the following day, without any prior notice to plaintiff, concerted action was taken under this resolution. As shown by the affidavits, the so-called strike was initiated by violence, caused a destruction of property and has provoked attendant disorder. An instance of the tactics adopted is found in the happenings at one of plaintiff's largest cafeterias, known as " The Traffic," in West Thirty-eighth street. Similar episodes took place at the other restaurants in the same neighborhood. The business of a cafeteria is at its height between eleven-thirty A. M. and two o'clock P. M., during which time the larger part of its revenue is derived from the luncheon trade. Apparently, in the neighborhood of these cafeterias a great number of garment workers and others are employed, upon whose patronage that cafeteria to a large extent depends. At eleven-thirty in the morning of April fourth a group said to have been about fifteen in number, entered " The Traffic " cafeteria as though they were intending customers. They announced in a loud voice that the place was " on strike " and that everybody must get out; they pursued the employees into the basement, threatened them if they did not cease work, and used tactics calculated to strike terror. During the turmoil that ensued the invaders shut off the lights, ordered customers who were taking their meal to leave under threat of being beaten, took their plates from them, threw them on the floor, scattered food, overturned chairs and tables, broke dishes, and created considerable havoc. Many women became hysterical. Crowds collected. Fights ensued. The place was closed to business and has since so remained because of continued tactics of intimidation. Defendants circulated the statement that the food served was unwholesome and the conditions in the restaurant unsanitary. Plaintiff claims that it has conducted its business upon a high plane of service to the public and that its treatment of its employees has been considerate. It avers without contradiction that there had been no expressed dissatisfaction among its employees and that no demands for improvement in working conditions or increased pay had been made. It sets forth that its employees were not members of the defendant

union nor did they participate in the calling of the so-called strike. These affidavits are numerous and convincing. In many respects they are not controverted by defendants' opposing affidavits which, however, assert that some of the individuals who had worked for plaintiff were discontented and actually did lend their support to defendants, most of them doing so subsequently to the violent conduct of April fourth. Many employees state that they have been intimidated and led to abandon their employment because of threats against their personal safety. Some say they have actually been assaulted. Some of those picketing in defendants' behalf make similar averments of attack by plaintiff's agents. Plaintiff further asserts that the individual defendants, Kramberg and Obermeier, personally led the group which entered "The Traffic" cafeteria and participated in those illegal acts of destruction and intimidation. These individual defendants deny that they were present in that cafeteria at the time mentioned. They do not controvert the charge that the group which entered this and other cafeterias was composed either of members of or active adhering participants with the defendants in the conduct of the strike. They do not claim that they adopted any means but these violent tactics to inform the employer of the existence of the so-called strike. Similar, though fortunately less serious, altercations and damage occurred in other cafeterias when the same method of announcing the strike was employed. What design except to terrorize could have prompted those destructive attacks made in eating places at the time when the public was being served? Violence engenders violence and the affidavits show a succession of riotous incidents. Placards said to be false have continued to be circulated and persons have been and are being warned by pickets not to patronize the cafeterias lest the food be poisoned. Concoctions disseminating vile and unbearable odors have been placed in the restaurants so as to drive out their patrons. Crowds have gathered in front of them in riotous demonstrations, blocking access, and many fights and assaults have occurred. "The Traffic" cafeteria has remained closed, and business in other restaurants is being carried on with difficulty and their clientele is of course much reduced. Daily the Magistrates' Courts have been clogged with charges against the adherents of defendants of assault, disorderly conduct and violations of section 600 of the Penal Law. Upwards of 150 individuals have been arrested upon such charges in one day. A great number have been found guilty by the magistrates, indicating that the picketing is not peaceful but warlike. Occasionally those alleged to be in the employment of plaintiff and other restaurant owners are likewise charged in

those courts with having committed acts of violence or reprisals in the altercations which naturally followed from the violent onset of this unannounced strike. Plaintiff further shows that these acts are continuing, that long picket lines are formed, and as soon as a picket, because of alleged misconduct or altercation, is taken by the police from his position in the line, another fills it, and that those who have been convicted by the magistrate of engaging in these acts have returned to the scene, after the fines are paid, and have repeated the acts which had been condemned by the magistrate.

Before this motion came before me an order to show cause had been issued containing an injunction and, if plaintiff's affidavits be true, they indicate that defendants have violated or countenanced the violation of that order. Plaintiff further charges and defendants do not deny that defendants are themselves engaged in the cafeteria business, operating one at Union Square, and have been seeking locations in the garment district in order to open additional cafeterias which would compete with plaintiff's and others located in that district. It further asserts that part of defendants' program is to put such cafeterias out of business in order that the field may be left to them and they may the more easily succeed in establishing new cafeterias of their own which will serve the wants of that vicinity.

Defendants assert that their undertaking is to organize the employees of cafeterias and that this strike is to the end that better working conditions and shorter hours may be obtained. They do not deny that derogatory matter in respect of these cafeterias as above noted has been circulated, but flatly assert that it is true. In this respect, however, very few details are contained in the defendants' papers, which abound in general statements. It is notable that no complaint has been made to the board of health which inspects these cafeterias and has supervision and power to remedy any such alleged conditions.

Despite the terms of the above-mentioned order defendants have picketed and assert their right to continue to picket plaintiff's premises in the same oppressive manner. The law in this State is well settled that a labor union may call a strike and reasonably picket premises with the intent of inducing the employer to employ only union labor. This may be done irrespective of the calling of any strike, for picketing without a strike is no more unlawful than a strike without picketing. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260.) The law, however, contemplates peaceful picketing. It is ordinarily a proper means of publicity and when adopted for a justifiable end may not be restrained.

"It may not be accompanied, however, by violence, trespass, threats or intimidation express or implied." (ANDREWS, J., in *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin, supra,* 263.) The law does not sanction oppressive picketing as part of a campaign of illegal violence or allow it to be used as a screen for the perpetuation of acts of illegality, intimidation and injury. As stated in *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin* (*supra,* 269): "Where unlawful picketing has been continued; where violence and intimidation have been used and where misstatements as to the employers' business have been distributed, a broad injunction prohibiting all picketing may be granted. The course of conduct of the strikers has been such as to indicate the danger of injury to property if any picketing whatever is allowed." The method by which this strike was started, the violence which has followed, despite the numerous convictions in the Magistrate's Court of those who have continued to participate, defendants' undenied purpose of crushing plaintiff's restaurants so they may supplant them with restaurants of their own, and the high-handed methods generally used by defendants, all indicate that the picketing which the court is now urged to sanction is designed to be and is in its very nature malicious in purpose, non-peaceful and calculated to continue and provoke further violent altercations. If defendants had set out to accomplish a justifiable end by peaceful picketing there would have been no occasion for the resort to the violence with which they initiated their campaign. The picketing shown by the papers before me constitutes an unjust invasion of plaintiff's rights in the legitimate carrying on of its business. Under the well-settled law of this State plaintiff is entitled to an order restraining *pendente lite* these defendants from the continuance of such acts. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Rentner* v. *Sigman,* 216 App. Div. 407.) Settle order on notice.